IN THE DISTRICT OF McCURTAIN COUNTY
STATE OF OKLAHOMA

1. MATTHEW HIGGINS,           )
                              )
             Plaintiff,       )    CJ-16-122
                              )
                              )    JURY TRIAL DEMANDED
v.                            )    ATTORNEY LIEN CLAIMED
                              )
1. TYSON POULTRY, INC,        )
                              )         COURT CLERK'S OFFICE
2. TYSON FOODS, INC,          )      County of McCurtain, State of Oklahoma
                              )              F I L E D
             Defendants.      )            NOV 22 2016
                                        VICKI JUSTUS, Court Clerk
                  PETITION          By_____
                                                    Deputy

**COMES NOW THE PLAINTIFF** and hereby pleads his claims as follows:

### PARTIES

1. The Plaintiff is Matthew Higgins, an adult resident of the state of Arkansas.

2. The Defendants are:

    A.   Tyson Poultry, Inc., a company doing business in McCurtain County, Oklahoma; and,

    B.   Tyson Foods, Inc., a company doing business in McCurtain County, Oklahoma.

### VENUE

3. Plaintiff's claims are for gender discrimination including sexual harassment and retaliation after Plaintiff complained of and opposed the harassment and discrimination, in violation of Title VII of the Civil Rights Act of 1964, the OADA

1

EXHIBIT 1

and, for retaliation, Oklahoma's clearly established public policy as set out in Oklahoma's Anti-Discrimination Act, 25 Okla. St. § 1301, et seq. which prohibits retaliation but does not provide a statutory remedy for such conduct, *see Edwards v. Andrews*, 2016 OK 107, P5-P9 (Okla. 2016); violation of Plaintiff's rights under the Family Medical Leave Act; and retaliatory termination and Plaintiff exercised his right to file a police report after receive threats of violence at his workplace.

4. The Defendants are located, and do business, in McCurtain County, and the actions giving rise to this action occurred in McCurtain County such that venue is proper under 12 Okla. St. § 134.

## STATEMENT OF FACTS

5. The Defendants, jointly and/or separately, employed at least fifty or more employees within seventy-five road miles of Plaintiff's work location, for at least twenty or more employees during at least twenty weeks of the current or proceeding calendar year such that they are employers subject to the provisions of the FMLA and Title VII. There is no minimum employee requirement under the OADA or Oklahoma's public policy.

6. Tyson Poultry, Inc. is identified as Plaintiff's employer on Plaintiff's W-2 forms. Defendant, Tyson Foods, Inc. is identified as Plaintiff's employer on his W-2 forms. Accordingly, both Defendants employed the Plaintiff and are subjected to liability on the claims pled herein.

EXHIBIT 1

7. Plaintiff, an adult male, worked for the Defendants from around 2009 until he was involuntarily terminated around February 15, 2016.

8. Plaintiff worked on part of the chicken processing line, was qualified for his job and performed satisfactorily.

9. Around early February 2016, the Plaintiff was transferred to a different area of the Defendants' facility.

10. After the transfer, Plaintiff's co-workers began harassing the Plaintiff including calling him "faggot", "p*ssy", "p*ssy m*th*f*cker" and other statements implying Plaintiff did not fit into the stereotype of what the co-workers believed a male should look or act like. Such comments indicate discrimination based on a gender stereotype.

11. Plaintiff reported the harassment to his supervisors, including Beth McKinney,[1] but the harassment only worsened. The attacks discussed in para. 10 continued, but Plaintiff was now also called a "snitch b*tch" by the same co-workers, who told Plaintiff, "you're dead, m*therf*cker", asked Plaintiff if he wanted a "22 to the head or a 44 in the chest" and told Plaintiff they would kill him if he came back to work. The co-workers also pretended to punch Plaintiff in the face and laugh when Plaintiff flinched would push the Plaintiff and knock into him continuously while he was trying to work.

---

[1] Spelling is approximate and based on Plaintiff's present knowledge.

3

EXHIBIT 1

12. Many of these comments occurred in Ms. McKinney's presence, but Ms. McKinney refused to stop the harassment. At one time, Plaintiff's co-workers began to call the Plaintiff names, Plaintiff looked to Ms. McKinney for assistance. Ms. McKinney deliberately turned away from the Plaintiff and left the room, leaving Plaintiff unassisted and without any supervisors there to stop the harassment.

13. Plaintiff reported the harassment to Mario (last name unknown)(Day Shift HR Manager) and told Mario that he (Plaintiff) had been threatened with being killed if he returned to work and that he was afraid for his life if he returned. Plaintiff told Mario that he was going to report the harassment to Defendants' corporate headquarters and file a police report for the threats he had received. In response, Mario instructed Plaintiff not to report his co-workers' conduct to Corporate or to the police and not to file a police report.

14. Thereafter, Plaintiff contacted Hanna (last name unknown)(Night Shift HR) and asked if he could return to work without being harassed. Plaintiff told Hanna that he still wanted to file a police report and report the harassment to Corporate. In response, Hannah instructed Plaintiff not to file a police report and not to report the harassment to Corporate. Additionally, Hannah told Plaintiff that the Defendants were going to investigate Plaintiff's claims and that he should not return to work unless and until allowed to do so by Tyson.

15. Thereafter, Plaintiff attempted to speak with someone in Human Resources about any investigation and when he could return to work. However, no one returned

4

EXHIBIT 1

Plaintiff's call and he was not allowed to speak with anyone who claimed to know what was happening with an investigation.

16. Plaintiff filed a police report approximately three days after his conversation with Hanna, described in para. 14, above.

17. The following day, Plaintiff called HR and told Hanna he had filed a police report concerning the harassment he suffered. Hanna became angry, asking Plaintiff "why did you do that?" Plaintiff also told Hanna he had spoken with an attorney about the harassment. In response, Hanna told Plaintiff "If you've got a lawyer, I can't speak to you anymore". Hanna then ended the conversation, telling Plaintiff someone from Tyson would contact him.

18. Plaintiff continued to attempt to go back to work, but was told about two days after his conversation with Hanna, described in para. 14, above, that he had been terminated for accumulating too many absences, or "points". Plaintiff was told the termination went into effect approximately one week before, after Plaintiff was absent from work the first day after the assault. However, during the conversations Plaintiff had with HR, he was always reassured he had a job, but that he should give the Defendants time to investigate his allegations before returning to work. It was not until he notified Hannah that he filed a police report and consulted an attorney about the harassment that he was terminated.

19. As to the claimed reason for termination – that Plaintiff accumulated too many "points" under the attendance system – Defendants give employees one "point" for

5

EXHIBIT 1

each day they are absent and notwithstanding the reason(s) for the absence. Employees are terminated after they receive a certain number of "points". There are no exceptions given for employees whose absences are for serious medical conditions under the FMLA.

20. Within two years of Plaintiff's termination he was absent approximately eight days for serious medical conditions including Type A Flu and Pneumonia.

21. At the time Plaintiff took off work for the serious medical conditions described in para. 20, above, he had worked at least one year for the Defendant and at least 1250 hours in the prior twelve months and was entitled to FMLA leave for these serious medical conditions.

22. Plaintiff notified his supervisors of the basis for his medical leave, but was not given notice of his rights or obligations under the FMLA.

23. Additionally, Defendants assigned Plaintiff "points" for the approximate eight (8) days he was absent for the flu and/or pneumonia.

24. Plaintiff would not have accumulated enough "points" to justify termination under Defendants' point system unless Defendant counted against the Plaintiff the absences taken for FMLA protected reasons.

25. If Defendants' claimed reason for termination is the true reason for termination, the Defendants have interfered with Plaintiff's rights under the FMLA by using the FMLA protected absences.

EXHIBIT 1

26. Additionally, or in the alternative, the claimed reason for terminating the Plaintiff is pretextual for several reasons including that: Defendants, at all times, indicated Plaintiff still had a job until he filed a police report and complained of the sexual harassment and other abuse; and, that Plaintiff was only terminated after his complaints of harassment and filing of a police report.

27. At the least, significant and/or motivating factors in the decision to terminate the Plaintiff include his gender, his complaints of gender harassment and discrimination and/or his exercise of his right to file a police report for the unlawful assaults upon his person.

28. Plaintiff has exhausted his administrative remedies by timely filing EEOC charges of discrimination against each Defendant. Such charges were filed on March 14, 2016. The EEOC issued Plaintiff's right to sue letters for both charges on October 19, 2016, and Plaintiff received such charges thereafter. This petition is timely filed within ninety (90) days of Plaintiff's receipt of his right to sue letters.

## COUNT I

Plaintiff incorporates the above allegations and further pleads:

29. Discrimination on the basis of gender, including subjecting Plaintiff to a gender-based, sexually hostile working environment and retaliating against Plaintiff for his complaints of discrimination, which violate Title VII of the Civil Rights Act of 1964 and Oklahoma's Anti-Discrimination Act.

EXHIBIT 1

30. Should the Court determine that the OADA does not provide a cause of action for retaliation, Plaintiff, in the alternative, asserts a public policy claim for retaliatory termination after Plaintiff complained of age discrimination as set out in 25 Okla. St. § 1301, et seq., which prohibits retaliation but does not provide a statutory remedy for such conduct, *see Edwards v. Andrews*, 2016 OK 107, P5-P9 (Okla. 2016).

31. Under Title VII, the OADA and Oklahoma's public policy, Plaintiff is entitled to his wage loss (including back, present and front pay along with the value of benefits associated with such wage).

32. Because the conduct of the Defendants was willful or, at the least, in reckless disregard of Plaintiff's rights, he is entitled to an award of punitive damages under Oklahoma's public policy and Title VII.

33. Plaintiff is automatically entitled to liquidated damages under the OADA.

## COUNT II

Plaintiff incorporates the above allegations and further pleads:

34. Retaliatory termination after Plaintiff sought to, and did, exercise his legal right to report to the police the assault and harassment committed by his co-workers, is a violation of Oklahoma's clearly established public policy set out in legal authority including *Hayes v. Eateries, Inc.*, 1995 OK 108, 905 P.2d 778, 789 (Okla. 1995)(prohibiting retaliation against employees who seek to vindicate their own legal right or interest); *Vannerson v. Board of Regents of University of Oklahoma*,

1989 OK 125, 784 P.2d 1053; *Turner v. Reynolds Ford, Inc.*, 1998 U.S. App. LEXIS 9552, *37 (10th Cir. Okla. 1998)(public policy protects victims crimes from retaliation for reporting that crime to the police).

35. Under this Count, the Plaintiff is entitled to his wage loss (including back, present and front pay along with the value of benefits associated with such wages), and emotional distress/dignitary harm damages.

36. Because Defendants' conduct was willful or, at the least, in reckless disregard of Plaintiff's rights, he is entitled to an award of punitive damages.

## COUNT III

Plaintiff incorporates the above allegations and further pleads:

37. Using Plaintiff's FMLA protected absences as a justification in terminating his employment is a violation of Plaintiff's rights under the FMLA's anti-retaliation provision, the anti-interference provision, or both.

38. Under this Count the Plaintiff is entitled to his wage loss and an equal amount of liquidated damages.

## PRAYER

**WHEREFORE,** Plaintiff requests this Court enter judgment in his favor and against the Defendants and grant him all compensatory damages suffered together with all damages, liquidated damages, attorneys' fees, costs and interest and such other legal and equitable relief as this Court deems just and proper in an amount exceeding that required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

EXHIBIT 1

**RESPECTFULLY SUBMITTED THIS 18th DAY OF NOVEMBER, 2016.**

HAMMONS, GOWENS, HURST
& ASSOCIATES

Mark E. Hammons, OBA No. 3784
Amber L. Hurst OBA No. 21231
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
(405) 235-6100; (405) 235-6611 (fax)
Email: Amber@hammonslaw.com
*Counsel for Plaintiff*
JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

EXHIBIT 1